Slip Op. 07- 76

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - -x
                                :
The Resource Club, Ltd.,    :
                                :
        Plaintiff,     :
                                :
       v.               :   Before: Pogue, Judge
                                :   Court No. 03-00781
United States,         :
                                :
        Defendant.    :
- - - - - - - - - - - - - - - -x

OPINION

[Plaintiff's motion for summary judgment denied; Defendant's cross-motion for summary judgment granted.]

Dated: May 16, 2007

Follick & Bessich(John A. Bessich, Suzanne Liberti) for the Plaintiff.

Peter D. Keisler, Assistant Attorney General; Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice Barbara S. Williams, Attorney in Charge, International Trade Field Office;(Amy M. Rubin, Trial Attorney), Su-Jin Yoo, Bureau of Customs and Border Protection, U.S. Department of Homeland Security, Of counsel, for the Defendant.

    Pogue, Judge: Plaintiff, Resource Club, Inc., ("Resource Club") challenges the United States Customs and Border Protection ("Customs") decision to assess, collect and retain duties and fees paid on imported merchandise. Relying on the statutory provision for abandonment of goods, Section 563(b) of the Tariff Act of 1930,

19 U.S.C. § 1563(b),[1] Resource Club contends that Customs improperly denied a refund of duties after Resource Club abandoned the subject merchandise to Customs.  Resource Club's claim, stated in its December 4, 2000 protest, followed the September 8, 2000 liquidation of its entries. Plaintiff's Complaint ("Compl.") 3. Customs' May 2, 2003, denial of Resource Club's protest is the agency action under review in this case. Before the Court are the parties' cross-motions for summary judgment on Resource Club's claim.  For the reasons explained below, Plaintiff's motion for summary judgment is denied and Defendant's cross-motion for summary judgment is granted.

### Jurisdiction and Standard of Review

This court's jurisdiction to hear the Plaintiff's challenge lies under 28 U.S.C. § 1581(a)("[t]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest . . . .").  In an action under § 1581(a), the Court reviews the matter de novo.  28 U.S.C. § 2640(a)(1).  See Rheem Metalurgica S/A v. United States, 20 CIT 1450, 1456, 951 F.Supp. 241, 246 (1996), aff'd 160 F.3d 1357 (Fed. Cir. 1998).  Applying a de novo standard of review, the court examines the court record to reach the correct conclusion. Id.

Summary judgment is appropriate "if the pleadings,

---

[1] All references to the United States Code ("U.S.C.") are to the 2000 edition.

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." USCIT R. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**Summary of Facts**

The following facts are uncontested. Plantiff Resource Club is the importer of record of 1,683 dozen ladies' jeans, Entry No. 066-1132964-7, Pl.'s Statement of Material Facts Not in Dispute 2 ("Pl.'s R. 56 Statement"), and has paid all the related duties and fees associated with this entry. Id. Upon importation, on or about September 1999, a Customs national field import specialist detained the shipment pending the verification of authenticity of the shipment's Cambodian visa. Id. Resource Club protested this detention of the entry. Following the denial of Resource Club's protest, Customs notified Plaintiff, on May 19, 2000, that the Cambodian visa was not genuine and that the shipment had been seized as being imported contrary to law. Resource Club then petitioned for relief from Customs' seizure. Id. at 3.

Although it denied Resource Club's petition for relief, Customs also issued a decision letter, dated September 7, 2000, authorizing remission of the merchandise for "Export Only", upon payment of all storage charges and $14,137.00, representing 10

percent of the foreign dutiable value. Pl.'s R. 56 Statement 3. Customs' offer of relief was to expire if Resource Club failed to respond within 30 days. Plaintiff's Exhibit ("Pl.'s Ex.") G.[2] On September 8, 2000, the entry was liquidated. Pl.'s R. 56 Statement 3.

Resource Club filed a supplemental petition for further relief on November 3, 2000. Pl.'s R. 56 Statement 3. On December 4, 2000, Resource Club notified Customs that it was "formally withdrawing its petition and supplemental petition, and abandoning the subject goods to Customs" and provided Customs with an executed "Election of Proceedings form". Id.[3] On the same day, Resource Club filed the protest at issue in this action, number 1001-00-105159, contesting the assessment, collection, and retention of duties. Id. at 1.

Customs proceeded with forfeiture proceedings of the merchandise in February of 2001, and in April, the government

---

[2] The Government denies the accuracy of Resource Club's representation of the relief granted, adding that the relief was conditioned upon payment of the above stated fine, "payment of all accrued storage charges, the exportation under Customs' supervision of all of the seized merchandise and the execution of a hold harmless agreement." Def.'s Resp. Pl.'s Statement Material Facts as to which there are no Genuine Issues to be Tried 3 ("Def.'s R. 56 Resp."). The court finds this factual dispute immaterial to its resolution of the controversy.

[3] The Government admits that Plaintiff provided an Election of Proceedings form but denies the accuracy of Resource Club's representation of its letter to Customs. The government avers that Resource Club conditioned its withdrawal of the petitions upon the refund of all customs duties and fees. Def.'s R. 56 Resp. 2. The court finds this factual dispute immaterial to its resolution of the controversy.

contractor, EG&G services, who was the custodian of the goods during the seizure, sold the merchandise for exportation.  Def.'s Statement of Additional Material Facts as to which there are no Genuine Issues to be Tried 4 ("Def.'s Add'l. R. 56 Statement.").  On May 2, 2003, Customs denied Plaintiff's December 4, 2000 protest.  Pl.'s R. 56 Statement 3. Resource Club contends that Customs improperly denied its protest in light of its abandonment of the subject merchandise pursuant to 19 U.S.C. § 1563(b).

### Discussion

#### A. Statutory and Regulatory Framework

Resource Club argues for a full refund of duties and fees paid, citing 19 U.S.C. § 1563(b), which, in relevant part states:

> [u]nder such regulations as the Secretary of the Treasury may prescribe and subject to any conditions imposed thereby the consignee may at any time within three years from the date of original importation, abandon to the Government any merchandise in bonded warehouse, whereupon any duties on such merchandise may be remitted or refunded as the case may be, but any merchandise so abandoned shall not be less than an entire package and shall be abandoned in the original package without having been repacked while in a bonded warehouse (other than a bonded manipulating warehouse).

19 U.S.C. § 1563(b).[4]  Reading 19 U.S.C. § 1563(b) literally,

---

[4] Pursuant to this statutory authority, the Secretary of the Treasury promulgated regulations governing the importer's exercise of this allowance.  The relevant section, 19 C.F.R. § 158.43(a)-(b) reads:

> Allowance in duties for merchandise entered under bond destroyed under section 557(c), Tariff Act of 1930, as
(continued...)

Customs responds that Resource Club's goods were not stored in a "bonded warehouse" and therefore were not eligible for abandonment in the first place. Def.'s Mem. Supp. Cross-Mot. Summ. J. & Opp'n Pl.'s Mot. Summ. J. 5 ("Def.'s Mem.").[5] Customs also draws

---

(...continued)
    amended (19 U.S.C. 1557(c)), or for merchandise in bonded warehouse abandoned to the Government under section 563(b), Tariff Act of 1930, as amended (19 U.S.C. 1563(b)), shall be subject to the following conditions:

    (a) <u>Application by importer</u>. The importer shall file an application for abandonment or destruction of merchandise in bond with the port director on Customs From [sic] 3499, with the title modified to read "Application and Permit to Abandon (or Destroy) Goods in Bond." When an application is for permission to destroy, the proposed method of destruction shall be stated in the application and be subject to the approval of the port director.

    (b) <u>Concurrence of warehouse proprietor</u>. An application to abandon or destroy warehoused merchandise shall not be approved unless concurred in by the warehouse proprietor.

19 C.F.R. § 158.43(a)-(b). All references to the Code of Federal Regulations are to the 2002 edition.

[5] The statute authorizing the Secretary of Treasury to establish such warehouses is 19 U.S.C. § 1555(a), which reads:

    <u>[d]esignation; preconditions; bonding requirements, supervision</u>. Subject to subsection (b) of this section, buildings or parts of buildings and other enclosures may be designated by the Secretary of the Treasury as bonded warehouses for the storage of imported merchandise entered for warehousing, or taken possession of by the appropriate customs officer, or under seizure, or for the manufacture of merchandise in bond, or for the repacking, sorting, or cleaning of imported merchandise . . . . Before any imported merchandise not finally released from customs custody shall be stored in any such premises, the owner or lessee thereof shall give a bond in such sum and with

(continued...)

Court No. 03-00781                                                    Page 7

support for its position from the Tariff Act's "Enforcement Provisions". Customs notes that Resource Club's goods were seized as a result of Customs' finding that the entry visa for the importation was counterfeit, pursuant to 19 U.S.C. § 1595a(c)(3);[6] such a finding authorizes Customs to seize and forfeit the merchandise.[7] In addition, Congress charged Customs with storing

---

(...continued)
   such sureties as may be approved by the Secretary of
   the Treasury to secure the Government against any loss
   or expense connected with or arising from the deposit,
   storage, or manipulation of merchandise in such
   warehouse. . . .

19 U.S.C. § 1555(a).

[6] This section provides:

   [i]f the importation or entry of the merchandise is
   subject to quantitative restrictions requiring a visa,
   permit, license, or other similar document, or stamp
   from the United States Government or from a foreign
   government or issuing authority pursuant to a
   bilateral or multilateral agreement, the merchandise
   shall be subject to detention in accordance with
   section 1499 of this title unless the appropriate
   visa, license, permit, or similar document or stamp is
   presented to the Customs Service; but if the visa,
   permit, license, or similar document or stamp which is
   presented in connection with the importation or entry
   of the merchandise is counterfeit, the merchandise may
   be seized and forfeited.

[7] A summary forfeiture administered by Customs has the following effect under 19 U.S.C. § 1609(b):

   Effect. A declaration of forfeiture under this
   section shall have the same force and effect as a
   final decree and order of forfeiture in a judicial
   forfeiture proceeding in a district court of the
   United States. Title shall be deemed to vest in the
   United States free and clear of any liens or
                                                  (continued...)

seized goods, pending their disposition, in accordance with 19 U.S.C. § 1605, which, in relevant part reads:

> [p]ending such disposition, the property shall be stored in such place as, in the customs officer's opinion, is most convenient and appropriate with due regard to the expense involved, whether or not the place of storage is within the judicial district or the customs collection district in which the property was seized . . . .

19 U.S.C. § 1605.

Citing the above statutory provisions, Customs claims that it seized Resource Club's goods and stored them as required by law. Def.'s Mem. 9-10. Additionally, however, in response to Customs' May 19, 2000 notice which alerted Resource Club that its visa was counterfeit, Resource Club filed a petition for relief from the seizure, pursuant to 19 C.F.R. § 171.1.[8]  Customs replied on

---

(...continued)
encumbrances (except for first preferred ship mortgages pursuant to section 961 of Title 46, Appendix, or any corresponding revision, consolidation, and enactment of such subsection in Title 46) from the date of the act for which the forfeiture was incurred. Officials of the various States, insular possessions, territories, and commonwealths of the United States shall, upon application of the appropriate customs officer accompanied by a certified copy of the declaration of forfeiture, remove any recorded liens or encumbrances which apply to such property and issue or reissue the necessary certificates of title, registration certificates, or similar documents to the United States or to any transferee of the United States.

19 U.S.C. § 1609(b).

[8] That regulation provides:
(a) To whom addressed. Petitions for the remission or mitigation of a fine, penalty, or forfeiture incurred
(continued...)

September 7, 2000, offering relief, and prescribed a limited time of 30 days within which Resource Club was to respond. Pl.'s Ex. G.

---

(...continued)
    under any law administered by Customs must be addressed to the Fines, Penalties, and Forfeitures Officer designated in the notice of claim.

    (b) <u>Signature</u>. For commercial violations, the petition for remission or mitigation must be signed by the petitioner, his attorney-at-law or a Customs broker. If the petitioner is a corporation, the petition may be signed by an officer or responsible supervisory official of the corporation, or a responsible employee representative of the corporation. Electronic signatures are acceptable. In non-commercial violations, a non-English speaking petitioner or petitioner who has a disability which may impede his ability to file a petition may enlist a family member or other representative to file a petition on his behalf. The deciding Customs officer may, in his or her discretion, require proof of representation before consideration of any petition.

    (c) <u>Form</u>. The petition for remission or mitigation need not be in any particular form. Customs can require that the petition and any documents submitted in support of the petition be in English or be accompanied by an English translation. The petition must set forth the following:

    (1) A description of the property involved (if a seizure);

    (2) The date and place of the violation or seizure;

    (3) The facts and circumstances relied upon by the petitioner to justify remission or mitigation; and

    (4) If a seizure case, proof of a petitionable interest in the seized property.

    (d) <u>False statement in petition</u>. A false statement contained in a petition may subject the petitioner to prosecution under the provisions of 18 U.S.C. 1001.

19 C.F.R. § 171.1.

Court No. 03-00781                                                    Page 10

The 30-day deadline is authorized by 19 C.F.R. § 171.22.[9]

It is against this legal framework that Resource Club maintains that Customs unlawfully denied its petition protesting the imposition, collection, and retention of duties and fees.

**B. Resource Club's Errors**

It is significant that this case arises as a result of Customs' finding that Resource Club presented a counterfeit visa for the entry of the subject merchandise. Resource Club does not contest this finding or challenge the lawfulness of the attendant seizure. However, Resource Club asserts that it exercised its right to abandonment within the three-year period permitted by 19 U.S.C. § 1563(b), and therefore Customs should refund the duties that Resource Club paid upon entry. Considered in light of the legal framework outlined above, Resource Club's argument is

---

[9] 19 C.F.R. § 171.22 provides:
> [a]decision to mitigate a penalty or to remit a forfeiture upon condition that a stated amount is paid will be effective for not more than 60 days from the date of notice to the petitioner of such decision unless the decision itself prescribes a different effective period. If payment of the stated amount or arrangements for such payment are not made, or a supplemental petition is not filed in accordance with regulation, the full penalty or claim for forfeiture will be deemed applicable and will be enforced by promptly referring the matter, after required collection action, if appropriate, to the appropriate Office of the Chief Counsel for preparation for referral to the Department of Justice unless other action has been directed by the Commissioner of Customs.

19 C.F.R. § 171.22.

unpersuasive.

As noted above, in its reply to Plaintiff's May 9th petition, Customs offered relief and prescribed a time of 30 days within which Resource Club was to respond. Pl.'s Ex. G.  When Resource Club failed to respond by October 9, 2000, Customs initiated forfeiture proceedings.  The next correspondence from Resource Club came in the form of a supplemental petition for relief filed on November 3, 2000, almost 60 days after the September 7th Customs letter.  By the plain language of 19 C.F.R. § 171.22, the decision to mitigate the penalty expired after 60 days unless the decision itself described a different effective period.  In this case, by the terms of Custom's September 7, 2000 letter, there was a 30-day mitigation period. Once that expired, Customs could lawfully initiate the administrative forfeiture proceedings.  These forfeiture proceedings did not involve placing Resource Club's goods in a bonded warehouse; therefore, 19 U.S.C. § 1563(b), by its own terms, did not apply to Resource Club's goods.

Moreover, and apart from the lawfulness of Customs' forfeiture and sale, Resource Club's exercise of the abandonment provision suffers from fatal procedural errors.  Plaintiff failed to meet two explicit conditions for abandonment, both stated in Customs' implementing regulations for 19 U.S.C. § 1563(b).  Specifically, Resource Club failed to file Customs Form 3499 and failed to

Court No. 03-00781                                                  Page 12

produce evidence of the warehouse proprietor's concurrence. 19 C.F.R. § 158.43.

Because the statute's plain language subjects the exercise of abandonment to the Secretary's regulatory discretion, regulations promulgated pursuant to this authority have the force of law and are binding on this Court, unless they are "procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." United States v. Mead Corp., 533 U.S. 218, 227 (2001) (internal citations omitted). Resource Club does not challenge the validity of the regulations and no inferences drawn from the record in Resource Club's favor suggest that Plaintiff should be excepted from the regulation's requirements. Therefore, Customs' denial of the Plaintiff's protest is correct as a matter of law.

**C. Customs has no obligation to store seized goods in a bonded warehouse.**

Plaintiff also argues that because its goods were in Customs' custody when they were putatively abandoned, the "bonded warehouse" limitation is inapplicable, thereby entitling Resource Club to a full refund of duties and fees. Pl.'s Affirmation Opp'n Def.'s Cross-Mot. Summ. J. 3 ("Pl.'s Opp'n Mem."). The problem with this contention however, is that it ignores the legal status of the goods in question; the goods were seized by Customs due to their importation contrary to 19 U.S.C. § 1595a(c).[10]  Specifically,

---

[10] See supra, note 6.

Customs was acting pursuant to its enforcement authority under the Tariff Act, and that authority is independent of the abandonment statute, 19 U.S.C. § 1563(b), which appears in the "Transportation in Bond and Warehousing of Merchandise." Because Congress carefully outlined Customs' enforcement powers in a separate statutory provision, and excluded such powers from other sections, by negative inference, the separate provision for abandonment, which is not included in the statutory provision for seizure, cannot be read to impose additional conditions on the exercise of enforcement authority. See Hamdan v. Rumsfeld, __ U.S. __, 126 S. Ct. 2749, 2765 (2006)("A familiar principle of statutory construction . . . is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute."(citations omitted)). In addition, adopting Plaintiff's position would contradict another fundamental principle of statutory interpretation by rendering superfluous the broad delegation of discretion to a Customs officer in deciding what is a "convenient and appropriate" place to store seized goods under 19 U.S.C. § 1605, excerpted supra, p. 8. See TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'"(quoting Duncan v. Walker, 533 U.S. 167, 174 (2001))). Therefore, the bonded

warehouse provision does not have any bearing on the treatment of goods, stored elsewhere, prior to enforcement proceedings, or to the duties and fees paid upon importation of seized goods.

In United States v. One Case Paintings, 99 F. 426 (2d. Cir. 1900), the Court rejected a similar argument from a Plaintiff who wished to obtain a refund of duties by abandoning goods that had been forfeited and sold as a penalty for undervaluation. The Court held:

> "[i]mportation" and "fraudulent undervaluation" are two distinct acts. The doing of the one act makes the importer a debtor to the government for the amount of duties, the doing of the other act makes him lose his goods; but there is nothing in the language of section 32 which can be construed as a remission of the obligation to pay duties in any event.

Id. at 428. Similarly, importation of Resource Club's ladies' jeans and payment of the concomitant duties are distinct from the presentation of a counterfeit visa and the penalties arising therefrom. Nothing in 19 U.S.C. § 1595a(c)(3), the provision allowing for forfeiture of goods associated with a counterfeit visa, suggests either an obligation to store goods in a bonded warehouse or a remission of Resource Club's obligation to pay duties.

The proposition that Customs is not obliged to store seized goods in a bonded warehouse for the benefit of an importer is bolstered by the statutory provision for designating "bonded warehouses" and the legislative purpose such warehouses serve.

Section 1555 of 19 U.S.C. provides in part:

> buildings or parts of buildings and other enclosures <u>may be designated by the Secretary of the Treasury</u> as bonded warehouses for the storage of imported merchandise entered for warehousing, or taken possession of by the appropriate customs officer, or under seizure, or for the manufacture of merchandise in bond, or for the repacking, sorting, or cleaning of imported merchandise. . . . Before any imported merchandise not finally released from customs custody shall be stored in any such premises, the owner or lessee thereof shall give a bond in such sum and with such sureties as may be approved by the Secretary of the Treasury <u>to secure the Government against any loss or expense</u> connected with or arising from the deposit, storage, or manipulation of merchandise in such warehouse.

19 U.S.C. § 1555(a) (emphasis added). It is apparent from this language that bonded warehouses are not intended to protect the importer, as Resource Club suggests,[11] but rather to provide security to the Government. The intent to secure the government and not the importer is echoed by the very regulation that Plaintiff relies on. Subsection (c)(1) of the abandonment regulation states:

> <u>Costs</u>. When <u>in the opinion of the port director</u> the abandonment of merchandise under section 563(b), Tariff Act of 1930, as amended (19 U.S.C. 1563(b)), <u>will involve any expense or cost to the Government</u>, or if the merchandise is worthless or unsalable, or cannot be sold for a sum sufficient to pay the expenses of sale, such abandonment shall not be permitted unless the importer deposits a sum which in the opinion of the port director will be sufficient to save the Government harmless from any expense or cost resulting from such abandonment.

---

[11] See Pl.'s Opp'n Mem. 3. ("[The requirement that] goods be in a bonded warehouse at the time of abandonment, only applies to situations where the goods are abandoned while in custody and control of the importer. This requirement exists due to the fact that an importer must store imported goods in a bonded warehouse until the goods clear Customs.")

19 C.F.R. § 158.43(c)(1)(emphasis added).

Considered in light of the permissive language of 19 U.S.C. § 1555, it is well within the Secretary's authority to determine and designate the bonded warehouses that will sufficiently secure the government against loss or expense.

In addition, 19 U.S.C. § 1605 gives Customs broad discretion to store the goods in a site that is "convenient and appropriate" with "due regard" for the expenses involved.  The fact that Customs chose an unbonded warehouse to store the seized goods is in  no way contrary to law.  In other words, Customs is not under any obligation to store the goods in a bonded warehouse during a seizure.  Therefore, Resource Club's argument that, "[i]t is patently unfair and unjust to allow Customs to deny the Plaintiff's right of abandonment and duty refund, based on the fact that Customs decided to store the goods in a non-bonded warehouse,"[12] must fail.

While it is not necessary to decide whether there is a statutory "right of abandonment" as the Plaintiff contends, it is certainly not the case that an importer whose goods have been seized for a suspected violation of U.S. Customs law may preserve such a "right" by asserting a governmental obligation to store its goods in a bonded warehouse pending their disposition.

Finally, we note that by holding that an importer is entitled

---

[12] Pl.'s Opp'n Mem. at 3.

Court No. 03-00781

to a refund of all duties and fees, simply by abandoning his goods to Customs after being notified of possible fraud, the Court would create a significant moral hazard.  Importers could systematically skirt Customs' entry laws because counterfeit visas and other falsified information would carry no risk of loss or penalties. The law does not require such a result.

## CONCLUSION

For the foregoing reasons, the court **denies** Plaintiff's motion for summary judgment and **grants** Defendant's cross-motion for summary judgment.

IT IS SO ORDERED.

/s/ Donald C. Pogue
Donald C. Pogue, Judge

Dated:    May 16, 2007
          New York, New York

Slip Op. 07-76

UNITED STATES COURT OF INTERNATIONAL TRADE

```
- - - - - - - - - - - - - - - -x
                                :
The Resource Club, Ltd.,        :
                                :
          Plaintiff,            :
                                :
          v.                    :    Before: Pogue, Judge
                                :    Court No. 03-00781
United States,                  :
                                :
          Defendant.            :
- - - - - - - - - - - - - - - -x
```

**JUDGMENT**

Upon consideration of Plaintiff's complaint, the parties' cross-motions for summary judgment, and all other pertinent papers, and after due deliberation, it is hereby

**ORDERED** that Plaintiff's motion is denied; and further

**ORDERED** that Defendant's motion be granted; and further

**ORDERED** that this action is dismissed.

/s/ Donald C. Pogue
Donald C. Pogue, Judge

Dated:   May 16 , 2007
         New York, New York

## NOTICE OF ENTRY AND SERVICE

  This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

  Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

  Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble<br>Clerk of the Court

Date: _____    By: _____
                        Deputy Clerk